UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY DAVIS,

    Petitioner,

v.

    CASE NO. 09-10038
    HONORABLE VICTORIA A. ROBERTS
    UNITED STATES DISTRICT JUDGE

HEIDI WASHINGTON, Warden,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Terry Davis, ("Petitioner"), confined at the Huron Valley Women's Complex, filed for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her application by attorney Gerald M. Lorence, Petitioner challenges her conviction for first-degree premeditated murder, M.C.L.A. 750.316(1)(a); and possession of a firearm during the commission of a felony, M.C.L.A. 750.227(b). For the reasons stated below, the Petition for Writ of Habeas Corpus is **DENIED.**

### I. Background

A jury convicted Petitioner of the above offenses in the Wayne County Circuit Court. Because the facts do not need to be repeated in their entirety, the Court recites verbatim, the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming her conviction, which are presumed correct on habeas review. See *Dittrich v. Woods*, 602 F.Supp.2d 802, 803 (E.D. Mich. 2009):

1

Defendant's convictions arise from the shooting death of Alie Brock. There is no dispute that a physical fight between Brock and defendant's husband, Robert Davis, preceded the shooting and that Brock was larger than Davis.

*******************************************************************

Viewed in the light most favorable to the prosecution, the evidence showed that there was bad blood between the neighbors. When the fight broke out between Robert Davis and Brock, defendant yelled "Kill that nigger." Defendant then went inside her house and searched for a gun, finding it in the second place she looked. Once outside, she chased Brock before shooting him. Brock was standing when defendant shot him in the back. The wound to Brock's shoulder is consistent with his back being turned to the defendant. Additionally, two witnesses testified that they saw defendant and Brock at the time of the shooting, but not Davis, and the pools of Davis's and Brock's blood were located in different areas with neither containing the blood of the other, indicating that Brock was not on top of Davis hitting him at the time he was shot in the back as defendant and Davis both claimed.

Also, the evidence supported the inference that the bullet to Brock's cheek, which exited his jaw and reentered his chest where it perforated his heart, liver and colon, was fired second based on the severity of the damage caused by the shot, that it was fired from less than two feet, and that the wound was consistent with Brock being bent over or lying on the ground. This meant that the defendant closed the distance gap between herself and Brock and shot at least a semi-incapacitated Brock in a location that would surely result in severe injury or death. After the incident, defendant lied about her involvement and did not tell the police the whereabouts of the weapon used to kill Brock. This evidence was sufficient to enable the jury to find that the killing was premeditated and deliberate.

*People v. Davis*, No. 269096, * 1 (Mich.Ct.App., August 21, 2007).

Petitioner's conviction was affirmed on direct appeal. *Id.* The Michigan Supreme Court denied petitioner leave to appeal. *People v. Davis*, No. 135043 (January 8, 2008).

Petitioner now seeks a writ of habeas corpus on the following grounds:

   I.   Due Process requires vacating Petitioner's first-degree murder conviction where there was insufficient evidence of premeditation pursuant to US Const, Ams V, VI, XIV; Mich. Const 1963, Art 1, §§ 17, 20.

II. Petitioner was denied her right to a fair trial by the prosecutor's misconduct, where the prosecutor distorted the concept of "voluntary manslaughter" in closing argument, effectively reducing the burden of proof pursuant to US Const, Ams V, XIV; Mich. Const. 1963, Art. 1, § 17.

III. Petitioner's denial of a fair trial was due to the cumulative effect of the errors at trial pursuant to US Const, Ams V, VI, XIV; Mich. Const. 1963, Art. 1, §§ 17, 20?

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> 
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. Discussion

### A. Claim # 1. The insufficiency of the evidence claim

The Petitioner first contends that she is being unlawfully held, since her conviction on first degree murder was based on insufficient evidence. A habeas court reviews insufficiency of the evidence at trial claims by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court. Rather, it is up to the fact-finder to weigh the probative value of the evidence and resolve any conflicts in testimony. See *Malcum v. Burt,* 276 F.Supp.2d 664, 685-686 (E.D. Mich. 2003).

In order to prove first-degree murder in Michigan, the state must establish that the defendant's intentional killing of another was premeditated and deliberate. See *Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002). Premeditation and deliberation may be inferred from the circumstances surrounding the killing, including the type of weapon used and the location of the wounds. See *Johnson v. Hofbauer*, 159 F.Supp.2d 582, 596 (E.D. Mich. 2001); *People v. Berry*, 198 Mich.App. 123, 128 (1993) (premeditation and delieration may be inferred from the type of weapon used and the location of the

4

wounds); *Young v. Withrow*, 39 Fed.Appx. 60, 62 (6th Cir. 2002) (intentionally shooting victim in the back while he fled was sufficient evidence of premeditation). The state can establish premeditation through evidence of the following factors: 1) the prior relationship of the parties, 2) the defendant's actions before the killing, 3) the circumstances of the killing itself, and 4) the defendant's conduct after the homicide. See *Cyars v. Hofbauer*, 383 F.3d 485, 491 (6th Cir. 2004).

Under Michigan law, the time between the thought and the action should be long enough to afford a reasonable person a sufficient time to subject his or her actions to a "second look." See *Hamilton v. Luoma*, 2006 WL 2540948, 5 (E.D. Mich. 2006) (citing *Adler v. Burt*, 240 F.Supp.2d 651, 663 (E.D. Mich. 2003)). A few seconds between the antagonistic situation that took place between the defendant and the victim, and the defendant's decision to kill may be sufficient to create a jury question on premeditation. *Id*. Therefore, a sufficient time lapse to provide an opportunity for a "second look" may require mere seconds, or it may consume minutes, hours or more. The sufficiency of the time lapse, is dependent on the totality of the circumstances surrounding the killing. *Id.* (citing *People v. Berthiaume,* 229 N.W.2d 497, 500 (Mich.Ct.App.1975)).

In *Moore v. Bell,* 2009 WL 1803192 (E.D. Mich. 2009) (*cert. of appealability granted in part, denied in part on other grounds*, *Moore v. Bell*, 2010 WL 55481 (E.D. Mich. Jan 05, 2010)), the court upheld petitioner's first-degree murder conviction. The court reasoned that Petitioner: (1) took a gun with him to visit the victim; (2) shot the victim multiple times (twice in the back, twice in the front of her body, with a fifth shot resulting in a grazing wound); (3) hid the van used in the crime after it occurred; and (4)

gave different versions of what occurred when questioned. The Court held that this all supported a finding of premeditation and therefore, presented sufficient evidence to the jury. *Id.* at 5.

Similarly in *McCray v. Vasbinder*, 2008 WL 2782923 (E.D. Mich. 2008) the court upheld petitioner's first-degree murder conviction after reviewing a record replete with evidence of petitioner's opportunity for a second look. The court reasoned that petitioner's pause after confronting other people in the group; and, asking a companion for a gun and the time it took him to walk to the rear door of the car the victim was sitting in before shooting her was enough evidence to create a jury question on premeditation, and for the jury to infer the deliberation necessary to support a first degree murder conviction. The court ruled that the state court did not unreasonably apply federal constitutional law. *Id.* at 5-7.

Finally, in *Hamilton v. Luoma,* 2006 WL 254 0948 (E.D. Mich. 2006)**,** the court found petitioner's deliberate shooting of the victim in the back as he walked away, and petitioner's many opportunities to reconsider his decision to kill the victim -- observing the fight before he got involved, walking back to his vehicle to retrieve his weapon, opening the vehicle's hatch to get his rifle, aiming and subsequently discharging his the two or more shots he fired -- and ultimately running over victim with his truck in an attempt to the flee the scene was sufficient evidence to support petitioner's first-degree murder conviction. *Id.* at 5-6.

The present case is substantially similar to these cases. Evaluating the facts against the *Cyars* factors, before the shooting, an argument took place. While it didn't involve

the Petitioner, it did involve her husband, someone with considerably close ties; and undisputedly, her husband was going against a bigger opponent. However, testimony would support an inference of deliberation, since Petitioner shouted at her husband in the middle of the fight to "kill that nigger" before she retreated to her house in search of a loaded weapon. Further, Petitioner kept looking for the gun when she did not find it in the first place. Petitioner also testified that she did not follow up on any attempts to call the police. As in *Moore*, *McCray* and *Hamilton*, a jury could infer from the evidence that Petitioner had ample time to take a "second look" at her actions.

Testimony at trial suggests that the fight may have been over before the shooting, given that the witnesses saw Petitioner and victim but not Petitioner's husband. Further, the testimony suggests that the victim was facing away from the Petitioner at the time of the shooting. Finally, Petitioner's post-shooting conduct supports an inference of deliberation. Petitioner and her husband hid the gun and lied about who was involved in the actual shooting. Additionally, the police investigation found two pools of blood, casting doubt that the Petitioner shot the victim on top of her husband as they both claimed at trial. Further, Petitioner's husband did not admit to shooting the gun; he testified he was several feet away from a fired gun.

When evaluating the "second look" requirement, the evidence presented at trial does create a jury question as to whether the Petitioner had time to take a second look. Petitioner was outside for the fight; however, she decided to go in search of a loaded weapon. Once outside, she shot her gun towards the victim- one bullet in the back -- which suggests that the victim was running away, and one to the cheek. The shot to the

7

cheek had stippling around the wound, evidence that the victim was shot at close range. It further suggests that the Petitioner advanced and deliberately took the shot that she knew or should've know would lead to serious injury or death. The amount of time it took to search for the gun and then run after the victim and shoot him at close range, was sufficient for the jury to conclude that Petitioner had time to take a second look, and, subsequently, make the decision to kill the victim.

The court finds that the evidence presented at trial was sufficient for a trier of fact to find that Petitioner committed first-degree murder. Further, the court finds that the state court's decision was neither contrary to, nor an unreasonable application of, existing federal constitutional law. Petitioner's request for relief for insufficient evidence is denied.

**B. Claim #2. Prosecutorial misconduct claim**

The Petitioner next contends that she was denied a fair trial due to prosecutorial misconduct when the prosecutor distorted the concept of "voluntary manslaughter" in closing arguments. The Respondent argues that the court should not consider this claim because it is procedurally barred since defense counsel failed to timely object and preserve the issue for appeal.

When reviewing procedurally barred claims, courts have stated that in the interest of "judicial economy, the merits of a claim or claims [should be decided] first if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated," even though procedurally barred issues are generally decided first. *Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999). Additionally, "Federal courts are not

8

required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003). In this case, it would be easier to dispose of Petitioner's claim by analyzing its merits. The Court declines to address the procedural bar.

In order to prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The court can only provide relief if "the [prosecutor's] conduct was so egregious as to render the entire trial fundamentally unfair to [such a] degree tantamount to a due process violation" despite the prosecutor's conduct being "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Accordingly, the reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The prosecutor's alleged misconduct must be examined based on the totality of the circumstances of the entire trial, to determine whether it deprived a defendant of a fair trial. *United States v. Young*, 470 U.S. 1, 11-12 (1985).

The Sixth Circuit adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *Macias v.Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). First, the reviewing court must determine whether the challenged statements were improper. *Id.* at 452. If improper, the court then determines if the statements were flagrant by examining four factors: (1) the likelihood that the remarks tended to mislead the jury or prejudice the defendant; (2) whether the remarks were

isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant. *Id.* Finally, courts recognize that the "prosecution has "wide latitude" during closing arguments to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009). And while there is room given to prosecutors to make their case, it is also understood that the prosecutor may not "belittle the defense's witnesses, deride legitimate defenses or offer his own opinion about a witness's credibility." *Id.*

Petitioner points to the following statements delivered by the prosecutor as denying her right to a fair trial:

> "Manslaughter is not even applicable in this case. This is a case of first-degree murder." [Transcript dated 1/27/06, pp 17-18]

However, that statement was included in the following section of the prosecutor's closing argument:

> "The only difference between Second-Degree Murder and Manslaughter is that with Manslaughter, in order for it to apply, you have to have been moved by such anger, or such passion, that it reduces [the] test from Murder two to a Manslaughter. We know that's not even applicable in this case.
>
> Mrs. Davis got on that stand and she told you that she went out there and she shot and killed Alie Brock because she was afraid for her husband's life, she did it in defense of others. She didn't do it because she was mad. She didn't do it because she was full of passion. She did it to save her husband, if she is to be believed.
>
> Manslaughter is not even applicable in this case. This is a clear case of First-Degree Murder. Based on the testimony of the two witnesses, Anthony Brown and Patrick Patterson, who clearly have no stake in this case whatsoever.
> ***

10

> Ladies and Gentlemen, the testimony, the evidence, the physical evidence, the objects that have been admitted show that she deliberately and intentionally killed Alie Brock for no other reason than because she was mad about what he had done to her husband.
>
> Ladies and Gentlemen, I ask that you find defendant guilty of First-Degree murder, guilty of Felony Firearm." [Transcript dated 1/27/06, pp 17-18].

Applying the Sixth Circuit test outlined in *Macias,* the Court finds that in the context of the whole trial, this comment was not flagrant and, therefore, not improper. Further, there was little chance that the comment would mislead the jury, given that not only was the comment isolated, but it was also framed in the context of comparing the elements of two different offenses. The prosecutor, once done outlining the elements, made a conclusion based on the facts of the case already discussed at length during the trial- that a manslaughter conviction would be inappropriate, given the facts. Further, there is no evidence that the statement was made with an intent to deliberately mislead or antagonize the jury.

Finally, the total weight of the evidence was overwhelmingly against Petitioner. Testimony indicated the fight was over when Petitioner got involved; physical evidence indicated that the victim was shot in the back and up; Petitioner and her husband told inconsistent stories. When viewed together, it is enough evidence to lead a reasonable jury to infer Petitioner acted with deliberation and premeditation, and not in the heat of passion.

The court concludes that Petitioner's prosecutorial misconduct claim lacks merit. Therefore, her request for relief on this ground is also denied.

### C. Claim #3: Cumulative errors claim

Petitioner's final claim, alleges she was denied a fair trial because of cumulative error. A cumulative error analysis is appropriate where there are certain errors which, while considered alone may not deprive a petitioner due process, may cumulatively produce a trial that is fundamentally unfair. *United States v. Mays*, 69 F.3d 116, 123 (6th Cir. 1995). However, meritless claims or claims that are not prejudicial cannot be cumulated. *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996). Since this Court has determined that Petitioner's claims are not entitled to relief, Petitioner's cumulative errors claim is also denied.

## IV. <u>Conclusion</u>

The Court **DENIES** this petition. The Court also **DENIES** a certificate of appealability to Petitioner. A certificate of appealability is proper when a prisoner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To determine this denial, the prisoner must show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

The Court **DENIES** Petitioner a Certificate of Appealability. She failed to make a substantial showing of the denial of a federal constitutional right. Further, jurists of

reason would not find this Court's resolution of Petitioner's claims to be debatable or that she should receive encouragement to proceed further. Seibert v. Jackson, 205 F.Supp.2d 727, 735 (E.D. Mich. 2002).

**IT IS ORDERED.**

   /s/ Victoria A. Roberts

**HONORABLE VICTORIA A. ROBERTS**

**UNITED STATES DISTRICT JUDGE**

**Dated:** 7/20/10

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 20, 2010.

s/Linda Vertriest
Deputy Clerk

13